# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MARCIA EGGLESTON, as administrator
of the Estate of Rodney Geiser,

                  Plaintiff

vs.

WAYNE COUNTY, OHIO, et al.,

                  Defendants

CASE NO.    5:20-CV-02757

JUDGE BONITA PEARSON

**MOTION FOR JUDGMENT
ON THE PLEADINGS**

     Now come Defendants Wayne County, Ohio, Wayne County Board of Commissioners, Sheriff Travis Hutchinson, Captain Douglas Hunter, and Sergeant Eric Peters (collectively, "the Wayne County Defendants"), by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 12(c), respectfully move this Court to dismiss Plaintiff's Complaint for its failure to state claims for which relief may be granted.  The basis for this Motion is set forth in the attached Memorandum in Support, incorporated herein.

                  Respectfully submitted,

                  DICAUDO, PITCHFORD & YODER, LLC

                  */s/ Benjamin R. Sorber*
                  Marshal M. Pitchford (0071202)
                  mpitchford@dpylaw.com
                  J. Reid Yoder (0076587)
                  ryoder@dpylaw.com
                  Benjamin R. Sorber (0092739)
                  bsorber@dpylaw.com
                  209 S. Main St., Third Floor
                  Akron, OH 44308
                  Telephone: 330.762.7477
                  Facsimile:  330.762.8059

-and-

WAYNE COUNTY PROSECUTOR'S OFFICE

*/s/ Andrea D. Uhler*
Daniel R. Lutz (# 0038486)
Wayne County Prosecuting Attorney
Andrea D. Uhler (#0090056)
Assistant Prosecuting Attorney
115 West Liberty Street
Wooster, Ohio 44691
Phone: (330) 262-3030
Email: auhler@countyprosecutor.com

*Attorneys for Wayne County, Ohio, Wayne*
*County Board of Commissioners, Travis*
*Hutchinson, Douglas Hunter, and Eric Peters*

-and-

WAYNE COUNTY BOARD OF
COMMISSIONERS

*/s/  Jamie L.C. Pience*
Jamie L.C. Pience (0075026)
Administrative Counsel
*Wayne County Board of Commissioners*
*428 W. Liberty St., Wooster, OH 44691*
*Phone: 330-287-5478*
*Fax:  330-287-5407*
*Email: jpience@wayneohio.org*
*Attorney for Wayne County Board of Commissioners*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF ISSUES AND SUMMARY OF THE ARGUMENT ...................................... 1

STATEMENT OF FACTS ..................................................................... 3

LAW AND ARGUMENT ....................................................................... 5

      I.     STANDARD FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV.P. 12(c) ................................................................... 5

           In order to survive a motion to dismiss and/or for judgment on the pleadings, Plaintiff's complaint must allege sufficient facts to establish an entitlement to relief and may not rely upon a mere recitation of legal conclusions and unwarranted inferences. ................................. 5

      II.    THE WAYNE COUNTY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983. 8

           Plaintiff's claims under 42 U.S.C. § 1983 fail as a matter of law because the Wayne County Defendants' use of force did not violate the Fourth Amendment. Alternatively, Defendants are immune from suit because the use of force was objectively reasonable under the circumstances. ............................................. 8

      III.   PLAINTIFF'S CLAIMS UNDER THE AMERICAN'S WITH DISABILITIES ACT FAIL TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED. ............................................................... 13

           Recovery under the ADA requires that the discriminatory action be based on the individual's disability; where the state action is in response to a dangerous situation created by the individual, rather than based on the individual's disability, there is no liability. .................... 13

      IV.   PLAINTIFF IS NOT ENTITLED TO RELIEF ON ITS *RESPONDEAT SUPERIOR* THEORIES ........................................................... 15

           Plaintiff's claim under *Monell* (Count 7) fails to state a claim for which relief may be granted in the absence of a constitutional violation, much less a clear defined policy. Similarly, Counts 3, 8 and 9 of Plaintiff's Complaint (supervisory liability, §1983 failure to supervise, and §1983 ratification) do not state claims for which relief may be granted against Wayne County or individually against Sheriff Hutchinson and Capt. Hunter. ................................ 15

V.      DEFENDANTS ARE IMMUNE UNDER STATE LAW FROM CIVIL LIABILITY ON PLAINTIFF'S STATE LAW CLAIMS................................................18

Ohio Rev. Code § 2744.03(A)(6) provides the Wayne County Defendants with immunity from any state law tort liability under and, therefore, Plaintiff is not entitled to relief on her state law claims. ................................................................................................18

VI.     PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES. ............................19

Ohio Rev. Code § 2744.05(A) prohibits punitive damages against political subdivisions and, therefore, Plaintiff is not entitled to relief. ................................................................................................19

CONCLUSION ................................................................................................20

CERTIFICATE OF COMPLIANCE: LR 7.1 ................................................22

CERTIFICATE OF COMPLIANCE: CMC Scheduling Order ................22

CERTIFICATE OF SERVICE ................................................................22

# **TABLE OF AUTHORITIES**

## Cases

*Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) .................................................................. 5

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) ................................................. 14, 15

*Armengau v. Cline*, 7 Fed. Appx. 336, 343, 2001 WL 223857 ................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................................. 6

*Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) ...................................................... 7

*Beans v. City of Massillon*, Case No. 17-3088 (6th Cir. Aug 19, 2017)................................. 12, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955, 1964-65 (2007).................. 6

*Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 387, 403 (1997)....................... 16

*Chappell v City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) ....................................................... 12

*City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)............. 15

*Coker v. Summit County Sheriff's Dept.*, 90 Fed. Appx. 782, 788, 2003 WL 23140066 (6th Cir. Dec. 15, 2003)............................................................................................................................ 9

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)........ 7

*Connick v. Thompson*, 563 U.S. 51, 60–61, 131 S. Ct. 1350 (2011) .......................................... 16

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495 (6th Cir.1996) .................................................. 16

*Drake v. Vill. of Johnstown, Ohio*, 534 Fed.Appx. 431, 442 (6th Cir. 2013) .............................. 17

*Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 (6th Cir.2006) .............................................. 15

*Farinacci v. City of Garfield Hts.*, 461 Fed.Appx. 447, 453 (6th Cir. Feb. 7, 2012). ................. 18

*Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763 (6th Cir. 2004) .......................................... 11

*Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989) ................................................ 1, 9, 10

*Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)............................................... 16

*Haas v. Village of Stryker*, 6th Dist. Williams No. WM-12-004, 2013-Ohio-2476 ..................... 19

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ........................................................................ 8

*Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) .................................................................. 7

*Milligan v. United States*, 644 F. Supp. 2d 1020, 1040 (M.D. Tenn. 2009).................................. 15

*Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)............................................................. 16

*Murray-Ruhl v Passinault*, 246 F. App'x 338 (6th Cir. 2007) ..................................................... 13

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).......... 6

*Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427 (1985) .................................................... 16

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)................... 8, 9

*Pembaur v. Cincinnati*, 475 U.S. 469  (1986) .............................................................................. 17

*Pollard v. City of Columbus, Ohio*, 780 F.3d 395 (6th Cir. 2015) ............................................... 10

*Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974).................................................................... 7

*Ragsdale v. Sidoti*, No. 5:12 CV 2484, 2015 WL 10986350 (N.D. Ohio June 5, 2015) ............. 17

*Rodriguez v.* Jabe, 904 F.2d 708, 708. (6th Cir. 1990) .................................................................. 7

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) ............................................................................... 9, 11

*Schaad v. Buckeye Valley Loc. Sch. Dist. Bd. of Educ.*, 5th Dist. Delaware No. 15 CAE 08 0063,
    2016-Ohio-569, ¶ 34 ................................................................................................................. 19

*Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994) ..................................................... 1, 16

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) ........................... 5, 6

*Snyder v. United States*, 590 Fed.Appx. 505 (6th Cir. 2014) ...................................................... 17

*Stahl v. Coshocton Cty.*, Case No. 17-4112 (6th Cir. Oct 31, 2018) ............................................ 12

*Stevens-Rucker v. City of Columbus*, Case Nos. 17-3384/3475 (6th Cir. Jul 10, 2018).............. 12

*Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)...................................................................................... 10

*Thompson v. Williamson Cty., Tenn.*, 219 F.3d 555 (6th Cir. 2000) ...................................... 14, 15

*Tinney v. Richland Cnty.*, No. 1:14 CV 703, 2015 WL 542415 (N.D. Ohio Feb. 10, 2015)........ 17

*Tucker v. Tennessee,* 539 F.3d 526, 532 (6th Cir. 2008). ............................................................ 14

*Untalan v. City of Lorain*, 430 F.3d 312, 315 (6th Cir. 2005)...................................................... 12

*Veney v. Hogan*, 70 F.3d 917, 921-922 (6th Cir. 1995)). .......................................................... 7, 9

iv

*Watson Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) ................................................................................................................................ 7

*Wingfield v. Cleveland*, 8th Dist. Cuyahoga No. 100589, 2014- Ohio-2772 .......................... 1, 17

**Statutes**

42 U.S.C. § 12132 ................................................................................................................. 1, 13

42 U.S.C. § 1983 ............................................................................................................... 8, 9, 17

Ohio Rev. Code § 2744.03 (A)(6). ............................................................................................ 18

Ohio Rev. Code § 3735.50 ......................................................................................................... 19

Ohio Rev. Code §. 2744.05(A) ................................................................................................... 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 6, 9

Fed. R. Civ. P. 12(c) ................................................................................................................. 7, 9

Fed. R. Civ. P. 8(a)(2) ................................................................................................................. 6

Fed. R. Civ. Pro. 12(b)(6). ........................................................................................................... 5

Fed. R. Civ. Pro. 12(c) ............................................................................................................. 5, 6

*Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985). ........................................................................ 10

**Constitutional Provisions**

Fourth Amendment to the United States Constitution ....................................................... passim

## STATEMENT OF ISSUES AND SUMMARY OF THE ARGUMENT

1.     Under the Fourth Amendment to the United States Constitution, an officer is permitted to use force in effectuating a seizure of an individual, so long as the officer's use of force is reasonable. *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865 (1989). Even where an officer's use of force is unreasonable, the officer is still entitled to qualified immunity so long as the officer reasonably believed the force used was lawful. *Saucier v. Katz*, 533 U.S. 194, 202, 205 (2001). In the present case, officers used lethal force on an individual who was brandishing a firearm while approaching officers and was failing to respond to repeated requests from officers to put the gun down. Should judgment be entered in favor of the Defendants on Counts 1, 2, 3, 6, 7, 8, and 9 of Plaintiffs' Amended Complaint because the force used was objectively reasonable in light of the totality of circumstances, thus entitling Defendants to immunity?

2.     Where force is used in response to a dangerous or potentially violent situation created by the decedent, rather than based on an animus against the protected group, there is no liability under Title II, the American's with Disabilities Act. Should judgment be entered in favor of Defendants on Count 5 of Plaintiff's Amended Complaint, for violation of the American's with Disabilities Act, where the officers' actions were in response to the dangerous and deadly situation created by Mr. Geiser when he approached officers brandishing a firearm, rather than based on any disability he may have had?

3.     It is well settled that a political subdivision "is not liable under 42 U.S.C. §1983 for an injury inflicted solely by its employees or agents; the doctrine of *respondeat superior* is inapplicable. It is only when the 'execution of the government's policy or custom…inflicts the injury that the municipality may be held liable under §1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994) (internal quotations omitted). Additionally, "[t]he provision of police services and the training of police are governmental functions are subject to statutory immunity." *Wingfield v.*

1

*Cleveland*, 8th Dist. Cuyahoga No. 100589, 2014-Ohio-2772. Plaintiff's Complaint does not set forth a constitutional violation (see Issue 1, *supra*), nor does the Complaint describe an unconstitutional policy or custom by which the Wayne County Defendants acted. Should judgment be entered in favor of Defendants on Counts 3, 7, 8, and 9 of Plaintiff's Amended Complaint?

4.     A county and its employees while acting in the scope of their official duties are generally immune from civil damages under Ohio Rev. Code § 2744.03(6). Should judgment be entered in favor of Defendants on Counts 4, 10, and 11 of Plaintiff's Amended Complaint?

5.     Punitive damages are not available against a political subdivision. Should judgment be entered in favor of Defendants on the punitive damages request in Plaintiff's Amended Complaint?

## STATEMENT OF FACTS

On Sunday, December 16, 2018, the Apple Creek Police Department received a call that Rodney Geiser, a 60 year old male, was threatening to hurt himself. (Amended Complaint at ¶¶11 and 12). Mr. Geiser had a history of emotional problems, which was known to the Apple Creek Police Department and Wayne County Sheriff's Office. (Id. at ¶13). Officer Nieman of Apple Creek encountered Mr. Geiser around 10:59 a.m. at the rear of a business in Apple Creek. (Id. at ¶14; see also, Exhibit D to the Amended Complaint, herein after, "Ex. D", body camera of Ofc. Nieman, beginning at run time 9:00). Once Mr. Geiser was alerted to police presence, he pointed a handgun at himself. (Id.). For the next twenty-four minutes, Mr. Geiser proceeded to walk through town while brandishing the firearm. (Ex. D; Am. Compl. at ¶¶16-37).

After encountering the officers, Mr. Geiser made his way into town. He crossed a busy street holding the firearm to his head. (Ex. D. at 11:36). After crossing the street, he made his way past businesses and a gas station, causing Officer Neiman to yell for people to get back in their cars. (Id.).  He then made his way down a residential street to a carwash.

At the carwash he told officers "All want is to f***ing die, is that so f***ing terrible?" (Ex. D at runtime 16:20). As the officers tried to talk to Mr. Geiser, he started threating them, "stay away, if anyone comes here, f*** it." (Ex. D at 16:25). Then he said "you [inaudible] them f***ers to back off," yelling "if I see anybody else, somebody is going f***ing to die...get the f*** out of here now." (Ex. D at 16:55). Ofc. Nieman relayed over his radio to the other responding officers that these threats had been made. (Ex. D at 17:00).

Mr. Geiser then left the car wash while brandishing his firearm, ignoring Officer Neiman's orders to not make any advancements. (Ex. D at 17:30). "Go ahead, shoot me," Mr. Geiser said as he walked away from the car wash while police shouted at him to stop moving. "Shoot me, f*** it. I'm a dead man anyhow." (Ex. D at 17:45). "Get the f*** outta my sight," he yelled at officers

3

while he walked up a residential street, towards a dollar store, past houses still brandishing his firearm. (*Id.*). Mr. Geiser continued to walk still brandishing the firearm and yelling obscenities while Ofc. Neiman ran towards Mr. Geiser yelling at him to stop and not go into the dollar store. (Ex. D at 18:57).

Mr. Geiser then sat on a bench near the dollar store where he continued to threatened to shoot himself and officers "You guys don't think I'm going to do this? Just try me. Just try me," he repeated. (Ex. D at 19:30). "Those other mfers better get away from me," he threatened to Ofc. Neiman, referring to the other responding officers on scene. (Ex. D at 20:50). When he saw two other officers along the perimeter, Mr. Geiser became increasingly more agitated and started yelling and accusing Ofc. Neiman of lying to him. (Ex. D at 21:38). He refused Ofc. Neiman's request to just talk, telling him "we've done enough talking." (Ex. D at 21:58).

"I'm done. I'm not taking no more bullsh*t … **it's either them or me** … If its them, it's them, I don't got no hard feelings … I'm already dead," he yelled to his friend, referring to the officers who were on scene. (Ex. D at 26:00). "**It's going to end here, it's either me or them**." (Ex. D at 27:35). As the officers tried to get Mr. Geiser to put his weapon down, he refused and told officers it was only going to end "one way." (Ex. D at 28:20).

Mr. Geiser then started walking around again still brandishing the firearm. Other civilians were starting to come outside to watch the scene unfold, causing officers to yell at people to get back in their homes. (Ex. D at 30:30). Then Mr. Geiser threatened to shoot a round off, asking the officers if they would shoot him then. (Ex. D at 31:55). When Ofc. Neiman said they did not want to hurt him, he responded: "you're going to have to." (*Id.*).

From there, Mr. Geiser made his way around to the front of a store. Deputy Rubenstein's body camera shows Mr. Geiser making his way around the front of the store and towards Dep. Rubenstein while Sgt. Peters was across the street in front of some residences. (Exhibit H to the

4

Am. Compl., at run time 25:25). Dep. Rubenstein and other officers yelled for Mr. Geiser to stop

and to drop his gun. (*Id*.). Mr. Geiser paused briefly before continuing to advance towards Dep.

Rubenstein while brandishing the firearm. (Ex. H at 25:45). It was while he was advancing towards

Dep. Rubenstein that Sgt. Peters fired a single shot. (Ex. H at 26:00).

Fearing for officer safety, Deputy Peters fired one round at Mr. Geiser, striking him in the

forearm and chest. (Id. at ¶¶37-39). Unfortunately, Mr. Geiser died from the injury. (Id. at ¶40).

Throughout the incident, Mr. Geiser was not responsive to officers' requests for him to put the gun

down. (See generally, Ex. D). He threatened to shoot at officers, saying it was only going to end

one way and it was going to be either him or them. While these events are certainly tragic, Deputy

Peters acted reasonably given the immediate threat Mr. Geiser posed to officer safety and the

community at large. Thus, the Wayne County Defendants are entitled to immunity for their actions

during events that day. For these reasons, judgment should be entered in favor of Defendants on

Plaintiff's Amended Complaint.

## **LAW AND ARGUMENT**

### I.  **STANDARD FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV.P. 12(c)**

**In order to survive a motion to dismiss and/or for judgment on the pleadings, Plaintiff's complaint must allege sufficient facts to establish an entitlement to relief and may not rely upon a mere recitation of legal conclusions and unwarranted inferences.**

It is well-established that a motion for judgment on the pleadings under Fed. R. Civ. Pro.

12(c) is governed by the same standard of review that applies to a motion to dismiss under Fed. R.

Civ. Pro. 12(b)(6). *See Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). In reviewing a motion

to dismiss, a court must construe the facts alleged in the complaint in the light most favorable to

the plaintiff and accept all factual allegations as true. *Sensations, Inc. v. City of Grand Rapids*,

526 F.3d 291, 295 (6th Cir. 2008). A court need not accept, however, conclusory allegations "that

do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). Rather, the complaint must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S., 662, 678, 129 S.Ct. 1937, 1940 (2009). While "detailed factual allegations" are not required, the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955, 1964-65 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1965.

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. Pro. 12(c), a court must construe the facts alleged in the complaint in the light most favorable to the plaintiff and accept all factual allegations as true. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). A court need not accept, however, conclusory allegations "that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). Rather, the complaint must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. Rather, "the complaint's 'factual allegation must be enough to raise the right to relief above the speculative

level,' and 'state a claim to relief that is plausible on its face.'" *Watson Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.*, 648 F.3d 452, 457 (6th Cir. 2011)(citing *Twombly*, 550 U.S. at 555). "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id*. In order to withstand a Rule 12(b)(6) motion to dismiss or Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all material elements under some viable legal theory." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Veney v.* Hogan, 70 F.3d 917, 922 (6th Cir. 1995) (complaint failing to allege wrongdoing by a particular defendant falls "far short of the standard that is necessary to weed out meritless actions). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal. *See Rodriguez v.* Jabe, 904 F.2d 708, 708. (6th Cir. 1990)("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003)(plaintiff failed to state any against certain defendants because he merely listed individuals as defendants and did not allege they were personally involved in the constitutional violations at issue); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974)(complaint that merely names persons as defendants but fails to allege any specific conduct against them is subject to summary dismissal as frivolous).

In this case, Plaintiff's Amended Complaint fails to set forth claims against the Wayne County Defendants for which relief may be granted in her favor. As is detailed further throughout this motion, the allegations as plead by Plaintiff do not arise to the level of a constitutional violation. Even if the allegations did, the officers have qualified immunity against Plaintiff's state

and federal claims. Judgment should be entered on the pleadings on Plaintiff's Amended Complaint.

**II. THE WAYNE COUNTY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983.**

> **Plaintiff's claims under 42 U.S.C. § 1983 fail as a matter of law because the Wayne County Defendants' use of force did not violate the Fourth Amendment. Alternatively, Defendants are immune from suit because the use of force was objectively reasonable under the circumstances.**

Plaintiff brings several claims arising under 42 U.S.C. § 1983 against the Wayne County Defendants. See Counts 1 – 3 and 6 – 9 of the Amended Complaint. Essentially, Plaintiff alleges she is entitled to relief for perceived Fourth Amendment violations under § 1983 in that the shooting of Mr. Geiser constituted an unreasonable seizure (Count 1) and an excessive use of force (Count 2) which violated his civil rights (Count 6) for which Sgt. Peter's supervisor, Capt. Hunter, is liable (Count 3). The Amended Complaint further alleges that the perceived violation was result of an unconstitutional policy (Count 7) or the result of a failure to supervise (Count 8) and that the violation was "ratified" by Defendants (Count 9). In order to establish liability for these claims, however, it is incumbent upon Plaintiff to prove that the Wayne County Defendants both violated Mr. Geiser's constitutional rights and are not entitled to qualified immunity.

As the United States Supreme Court has held, "[i]t is well-established that the doctrine of qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). **"Because qualified immunity is an immunity from suit rather than a mere defense to liability," the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the <u>earliest possible stage</u> in litigation."** *Pearson***, 129 S.Ct. at 815** (emphasis added). Thus, where

a qualified immunity defense has been timely raised by a defendant, as was in the present case, the plaintiff bears the burden to present "specific, non-conclusory allegations of fact" that will allow the district court to determine that "these facts, if proved, defeat the claim of qualified immunity." *Armengau v. Cline*, 7 Fed. Appx. 336, 343, 2001 WL 223857 (6th Cir. Mar. 1, 2001)(citing *Veney v. Hogan*, 70 F.3d 917, 921-922 (6thCir. 1995)).

The issue of whether a governmental official is entitled to qualified immunity is a legal issue that must be decided by the court. *Coker v. Summit County Sheriff's Dept.*, 90 Fed. Appx. 782, 788, 2003 WL 23140066 (6th Cir. Dec. 15, 2003). This Court must consider whether: (1) the governmental official violated a constitutional right; and, (2) that "the right is so clearly established that a reasonable officer would understand that his actions would violate that right." *Id.* As the Supreme Court has explained, "[f]irst, a court must decide whether the facts that a plaintiff has alleged (see Fed. R. Civ. P. 12 (b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." *Pearson*, 129 S.Ct. at 815-816 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Then, "if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*

As follows, the Wayne County Defendants are entitled to qualified immunity on Counts 1 – 3 and 6 – 9 and, therefore, as a matter of law cannot be liable. In the alternative, the Amended Complaint fails to demonstrate that the Wayne County Defendants' actions violated Mr. Geiser's constitutional rights, necessitating judgment be entered in their favor.

A claim brought pursuant to 42 U.S.C. § 1983 that a police officer used excessive force in making an arrest, investigatory stop, or other "seizure" of the person is subject to the "objective reasonableness" standard under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865 (1989). Where an excessive force claim arises from an arrest or investigatory stop, the "reasonableness" of the seizure depends on when the seizure is made and how it is carried out.

*Id.* at 395, citing *Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985). Whether the force used to effectuate

a seizure is reasonable is determined by "a careful lancing of the nature and quality of the intrusion

on the individual's Fourth Amendment interests against the countervailing governmental interest

at state. *Id.*at 396, quoting *Garner,* at 8 (internal quotations omitted). Proper application of the

Fourth Amendment's "reasonableness test" requires careful attention to the facts and

circumstances, including "whether the suspect poses an immediate threat to the safety of the

officers or others, and whether is actively resisting arrest[.]" *Id.*

The reasonableness of an officer's use of force "must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.,* citing *Terry v.*

*Ohio*, 392 U.S. 1, 20-22 (1968). As noted by the Supreme Court:

> Not every push or shove, even if it may later seem unnecessary in the peace of a
> judge's chambers," *Johnson* v. *Glick,* 481 F. 2d, at 1033, violates the Fourth
> Amendment. The calculus of reasonableness must embody allowance for the fact
> that police officers are often forced to make split-second judgments — in
> circumstances that are tense, uncertain, and rapidly evolving — about the amount
> of force that is necessary in a particular situation.

*Id.* at 396-397. The objective reasonableness of the officers' actions are judged in light of the

surrounding facts and circumstances, without regard to any alleged underlying intent or motivation

of the officers. *Id.* at 397, citing *Scott v. United States*, 436 U.S. 128, 137-139 (1978). *See also*,

*Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 403 (6th Cir. 2015)(An officer's decision to

employ deadly force is judged from the perspective of an officer at the scene, and not "with the

20/20 vision of hindsight.")

Weighing a claim for excessive force, courts consider the following *Graham* factors: (1)

the severity of the crime; (2) whether the suspect was resisting arrest or fleeing; and. (3) whether

the suspect posed an immediate threat to others, including the police officers involved. *Graham*,

490 U.S. at 396. Each claim for excessive force must generally be analyzed separately where the

claim involves several uses of force. *Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 772 (6th Cir. 2004).  The court should "identif[y] the seizure and procee[d] to examine whether the force used to effect *that* seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create those circumstances." *Id.* quoting *Dickerson v. McClellan,* 101 F.3d 1151, 1162 (6th Cir.1996) (emphasis sic).

Determining whether an officer's use force is unreasonable depends on whether it would be clear to a reasonable officer that his conduct was unlawful in the situation: "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 202, 205 (2001). Where an officer has a reasonable mistake as to whether the amount of force used is legal under the circumstances, the officer is entitled to qualified immunity.  *Id.* at 205. Qualified immunity protects officer from the "hazy border between excessive and acceptable force."  *Id.* at 206, quoting *Priester v. Riviera Beach*, 208 F.3d 919, 9260927 (11th Cir. 2000).

Under the objective reasonableness test and prevailing law, the officers were justified in the actions they took on December 16, 2018. During the incident at issue, the responding officers were aware that Mr. Geiser had emotional problems and had threatened violence. (Amended Complaint at ¶¶12-13). He was armed with a handgun and was walking down public streets, past people and moving vehicles, through town while brandishing the firearm. (*Id.* at ¶¶14 – 18, 21, 31-35). Officers were also aware he had stopped taking medication and was not stable. (*Id.* at ¶25). At the time Mr. Geiser was shot, he was within 30 feet of officers and walking towards an officer while brandishing the firearm. (*Id.* at ¶¶38; see also, body camera exhibits to the Amended Complaint). Throughout the entire encounter, Mr. Geiser did not heed repeated requests to drop the firearm. (See, *e.g.*, *id.* at ¶14).

11

The Sixth Circuit has found no liability for officers in other cases where similar uses of force was applied by police officers. For example, in *Beans v. City of Massillon*, Case No. 17-3088 (6th Cir. Aug 19, 2017), the Court of Appeals affirmed this Court's granting of summary judgment to the defendant municipalities and police officers on the basis of qualified immunity. In *Beans*, the decedent had taken a hostage and was occupying the back room of a hair salon. Sometime after officers gave the decedent cigarettes and a lighter in exchange for his knife and scissors, the decedent told officers that he had cut the gas line and was going to blow up the whole building and kill the hostage. *Id.* at p. 3. After this threat was made, members of Stark County SWAT team breached the back room and attempted to get the decedent to surrender. In a matter of seconds, the decedent attempted to ignite the lighter and was shot twice by one of the officers. *Id.* at pp. 3-5. Ultimately, the Sixth Circuit found all three *Graham* factors weighed in favor of defendants because the officers were faced with credible threats and an immediate risk to the safety of the hostage and themselves. *Id.* at 10.  *See also*, *Stahl v. Coshocton Cty.*, Case No. 17-4112 (6th Cir. Oct 31, 2018)(finding officers did not unlawfully seize and did not use unlawful force when they shot and killed a motorist who was driving towards officers and further finding that the officer who fired the shots was entitled to qualified immunity); *Untalan v. City of Lorain*, 430 F.3d 312, 315 (6th Cir. 2005)("within a few seconds of reasonably perceiving a sufficient danger, officers may use deadly force even if in hindsight the facts show that the persons threatened could have escaped unharmed"); *Stevens-Rucker v. City of Columbus*, Case Nos. 17-3384/3475 (6th Cir. Jul 10, 2018)(finding officers who shot a man wielding a knife were entitled to qualified immunity where the suspect approached the officers while wielding the knife); *Chappell v City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) (qualified immunity applied to officers who shot a knife wielding suspecting who was moving toward an officer "while ignoring their commands to drop the knife; and that they believed he was trying to attack them and, at a distance of less than seven feet"); *Murray-Ruhl v*

12

*Passinault*, 246 F. App'x 338, 350 (6th Cir. 2007)("the subjective intent of the victim—unavailable to the officers who must make a split-second judgment—is irrelevant to the question whether his actions gave rise to a reasonable perception of danger").

Viewing the allegations plead in the Amended Complaint under the objective standard there is no genuine issue of material fact that the use of force specifically applied by the Wayne County Defendants was lawful under the Fourth Amendment. Given the Fourth Amendment's allowance for officers to make split-second judgment decisions in volatile and dangerous situations, the officers' use by force was lawful.

Even assuming, *arguendo*, that the use of force was unlawful under the circumstances, the Wayne County Defendants are nonetheless entitled to qualified immunity on Plaintiff's claims due to their reasonable belief that the use of force was lawful. This belief was reasonable given the nature of the situation: Mr. Geiser was emotionally disturbed, showed no disregard for his life or that of the officers, refused to comply with the lawful orders of the officers, and was approaching an officer while brandishing a firearm. In this situation, a reasonable officer would believe that the force used, one single shot, was lawful under the Fourth Amendment. For these reasons, judgment should be entered on the pleadings in favor of Defendants.

### III.   PLAINTIFF'S CLAIMS UNDER THE AMERICAN'S WITH DISABILITIES ACT FAIL TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED.

**Recovery under the ADA requires that the discriminatory action be based on the individual's disability; where the state action is in response to a dangerous situation created by the individual, rather than based on the individual's disability, there is no liability.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a prima facia case for intentional discrimination on a Title II claim,

a plaintiff must show that: (1) the individual had a disability; (2) the individual was otherwise qualified; and, (3) the individual was excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of their disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)(citing *Tucker v. Tennessee,* 539 F.3d 526, 532 (6th Cir. 2008).

In a similar case where police used deadly force, *Beans,* Case No. 17-3088 (6th Cir. Aug 19, 2017), discussed *supra*, the Sixth Circuit upheld this Court's ruling that the officers and municipality had not violated the ADA during the officer involved shooting of an individual with mental issues. In this type of case, it is axiomatic that the plaintiff "present evidence that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" *Id.* at p. 7 (quoting *Anderson*, 798 F.3d at 357). In deciding *Beans*, the Sixth Circuit noted it did not need to consider the questions of whether Title II applies to arrests or whether the decedent had a qualified disability under the Act; instead, the court of appeals found no violation because the officers' actions were prompted based on the decedent's threatening and dangerous behavior and not predicated on a disability. *Id.* at pp. 7-8.

The *Beans* court also noted that the case before it was "largely indistinguishable" from *Thompson v. Williamson Cty., Tenn.*, 219 F.3d 555 (6th Cir. 2000). In *Thompson*, the Sixth Circuit found no ADA violation where officers shot and killed a "kinda mentally handicapped" man who wielded a machete as if he was about to throw it at the officer. *Thompson* at 556. The court concluded that the officer's failure to disarm the decedent "was not because [the officer] was inadequately trained to deal with disabled individuals, but because the decedent threatened him with a deadly weapon before he could subdue him. Thus, if the decedent was denied access to

14

medical services it was because of his violent, threatening behavior, not because he was mentally disabled." *Id.*

Here, like in *Beans* and *Thompson*, the officers only employed deadly force against Geiser because of his threatening behavior and continued failure to respond to officers' requests to stop and put down his gun—not because of any disability Geiser may have had. The Amended Complaint fails to allege any animus by the Wayne County Defendants against people with mental illnesses, let alone that an "animus against the protected group was a significant factor" in the alleged conduct. See *Anderson*, 798 F.3d at 357. Therefore, judgment should be entered on the pleadings in favor of Defendants on Count 5 of Plaintiff's Amended Complaint.

## IV.   PLAINTIFF IS NOT ENTITLED TO RELIEF ON ITS *RESPONDEAT SUPERIOR* THEORIES

**Plaintiff's claim under *Monell* (Count 7) fails to state a claim for which relief may be granted in the absence of a constitutional violation, much less a clear defined policy. Similarly, Counts 3, 8 and 9 of Plaintiff's Complaint (supervisory liability, §1983 failure to supervise, and §1983 ratification) do not state claims for which relief may be granted against Wayne County or individually against Sheriff Hutchinson and Capt. Hunter.**

Where a plaintiff asserts a policy or custom by virtue of a failure to supervise, the plaintiff must first establish the existence of an underlying unconstitutional failure to supervise by an individual supervisor and then demonstrate that: (1) supervision was inadequate under the circumstances; (2) the municipality's deliberate indifference; and, (3) a causal link between the municipality's failure to train or supervise and the alleged constitutional violation. *Ellis v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir.2006); *see also City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Milligan v. United States*, 644 F. Supp. 2d 1020, 1040 (M.D. Tenn. 2009), aff'd, 670 F.3d 686 (6th Cir. 2012).

Plaintiff must demonstrate that "action pursuant to official municipal policy" caused the injury. Any practice or policy of failing to supervise must practically have the force of law because

these are the only actions for which the municipality is actually responsible. *Connick v. Thompson*, 563 U.S. 51, 60–61, 131 S. Ct. 1350 (2011). Plaintiff's Amended Complaint does not allege any unconstitutional act committed by any supervisor as well as identify any unconstitutional custom policy or practice of Wayne County for failing to supervise.

A "custom" must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Department of Soc. Svcs*., 436 U.S. 658, 691 (1978); *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 507 (6th Cir.1996). It must reflect a course of action deliberately chosen from among various alternatives. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427 (1985); *Claiborne County,* 103 F.3d at 508. Aside from the absence of any unconstitutional conduct by the Wayne County Defendants, Plaintiff's Amended Complaint does not allege that any municipal action was taken with the requisite degree of culpability nor has she set forth a direct causal link between any existing alleged custom or policy and the alleged deprivation of any of Mr. Geiser's federal rights. *Gregory v. City of Louisville,* 444 F.3d 725, 752 (6th  Cir. 2006) (quoting *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 387, 403 (1997)). The threadbare allegations set forth in the Amended Complaint do not state a claim for which relief may be granted.

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691; *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994)("[A] municipality is not liable under § 1983 for an injury inflicted solely by its employees or agents; the doctrine of *respondeat superior* is inapplicable. It is only when the 'execution of the government's policy or custom…inflicts the injury' that the municipality may be held liable under § 1983.")(citations omitted). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby makes clear that

16

municipal liability is limited to actions for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

Additionally, "[t]he provision of police services and the training of police are governmental functions are subject to statutory immunity." *Wingfield v. Cleveland*, 8th Dist. Cuyahoga No. 100589, 2014- Ohio-2772. The Sixth Circuit has held that, "pursuant to the Ohio Revised Code, a City ... is immune from all state law claims arising out of the provision of police services." *Snyder v. United States*, 590 Fed.Appx. 505, 514 (6th Cir. 2014)(citing Ohio Rev. Code Ann. § 2744.01(C)(2)(a), 2744.02. *See also Drake v. Vill. of Johnstown, Ohio*, 534 Fed.Appx. 431, 442 (6th Cir. 2013)("A political subdivision is not liable in damages in a civil action for injury caused by any act or omission of the political subdivision or an employee thereof in connection with a governmental function."); *Tinney v. Richland Cnty.*, No. 1:14 CV 703, 2015 WL 542415, at *13 (N.D. Ohio Feb. 10, 2015)(internal quotation marks omitted). *See also, Ragsdale v. Sidoti*, No. 5:12 CV 2484, 2015 WL 10986350, at *6 (N.D. Ohio June 5, 2015). Thus, to the extent Plaintiff seeks damages under state law on Count 3 ("Supervisor Liability"), she is not entitled to relief.

Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior. *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citation omitted). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted).

Additionally, it should be noted that some of the allegations pled in Plaintiff's Amended Complaint as to these counts are explicitly false when the body camera exhibits attached to the Amended Complaint are reviewed. For example, Plaintiff alleges at ¶ 63 in Count 5 that "[t]he PETERS body camera audio recording demonstrates that PETERS did NOT tell HUNTER that

17

RODNEY GEISER was making any threatening gestures to anyone else. (Exhibit F.)" However, Sgt. Peters can be clearly heard telling Capt. Hunter that Geiser "threatened to kill himself, said he'd shoot at us too" (Ex. F at runtime 18:30). Later, Plaintiff alleges that the responding officers failure to give a warning to Mr. Geiser prior their use of force. (¶118, Count VII). This allegation is likewise contradicted by all of the body camera videos attached to Plaintiff's Amended Complaint, wherein the officers can be clearly heard shouting for Mr. Geiser to stop and shouting that they did not want to have to hurt him.

For the same reasons that Plaintiff's *Monell* claims fail, there is no individual liability on the part of Sheriff Hutchinson and Capt. Hunter. Judgment should be entered on the pleadings in favor of Defendants on Counts 3, 7, 8 and 9 of Plaintiff's Amended Complaint.

## V. DEFENDANTS ARE IMMUNE UNDER STATE LAW FROM CIVIL LIABILITY ON PLAINTIFF'S STATE LAW CLAIMS.

**Ohio Rev. Code § 2744.03(A)(6) provides the Wayne County Defendants with immunity from any state law tort liability under and, therefore, Plaintiff is not entitled to relief on her state law claims.**

This Court also should also dismiss Plaintiffs' state law claims (Counts 4, 10 and 11, and Count 3 as discussed above) because the Wayne County Defendants are entitled to immunity from tort liability under Ohio Rev. Code § 2744.03 (A)(6). *See Farinacci v. City of Garfield Hts.,* 461 Fed.Appx. 447, 453 (6th Cir. Feb. 7, 2012). This statute grants immunity to governmental employees from tort liability unless the plaintiff can establish: (a) his or her acts or omissions were manifestly outside the scope of the his employment or official responsibilities; (b) his or her acts or omissions were committed with malicious purpose, in bad faith, or in a wanton or reckless manner; or, (c) civil liability is expressly imposed upon him or her by a section of the Revised Code. *Id.*

The acts taken by the Wayne County Defendants occurred in the scope of their official duties and no civil liability is expressly imposed under a section of the Revised Code. The question

here turns on whether the Wayne County Defendants acted with malicious purpose, bad faith, or in a wanton or reckless manner. Turning to the allegations set forth in the Amended Complaint, without rehashing the tragic events precipitating the need for police to make a split-second decision in an emergency situation where officers' lives and community members were endangered, it is evident that state law immunity applies and Plaintiff's allegations do not entitle her to relief.

### VI.     PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES.

**Ohio Rev. Code § 2744.05(A) prohibits punitive damages against political subdivisions and, therefore, Plaintiff is not entitled to relief.**

Lastly, all of the punitive damages claims in this case should be dismissed. As noted above, the County of Wayne is a political subdivision. Ohio Rev. Code § 3735.50. Punitive damages cannot be awarded against political subdivisions. Ohio Rev. Code § 2744.05(A); *See also Schaad v. Buckeye Valley Loc. Sch. Dist. Bd. of Educ.*, 5th Dist. Delaware No. 15 CAE 08 0063, 2016-Ohio-569, ¶ 34; *R.K.*, 2013-Ohio-4939, ¶ 47; *Haas v. Village of Stryker*, 6th Dist. Williams No. WM-12-004, 2013-Ohio-2476, ¶ 47.  Employees of a political subdivision are entitled to the same immunity as the political subdivision itself, including immunity from punitive damages. *See R.K.* at ¶¶ 43, 47.

The Amended Complaint names the County of Wayne, the Board of Commissioners, and three county employees as defendants. (See generally, Amended Complaint). Punitive damages cannot be awarded against any of them. The Amended Complaint, its caption, and its allegations referencing defendants center around their roles with the county. Because Plaintiff is barred from recovering punitive damages from any and all of the named Defendants, judgment should be entered in favor of the Defendants on Plaintiff's claims for punitive damages.

## **CONCLUSION**

While the events that occurred on December 16, 2018 were undoubtably tragic, the Wayne County Defendants acted reasonably under the Fourth Amendment in response to a very dangerous situation which threatened the safety of the community and responding officers. Even if they were mistaken in their belief in the necessity of the force used, those beliefs were reasonable under the circumstances and what the officers knew and saw at the time. State and Federal Law affords the Wayne County Defendants will immunity for the actions taken that day. Plaintiff's Amended Complaint does not set forth claims for which she is entitled to relief.  By attaching as exhibits to the Amended Complaint all of the body camera footage of the incident, this court can review and determine at the earliest possible state in the litigation as to the applicability of immunity. The video shows the officers were responding reasonably to a dangerous and volatile emergency situation created by Mr. Geiser. Therefore, the Wayne County Defendants respectfully seek an order entering judgment on the pleadings in their favor on all counts set forth in Plaintiff's Amended Complaint.

Respectfully submitted,

DICAUDO, PITCHFORD & YODER, LLC

*/s/ Marshal M. Pitchford*
Marshal M. Pitchford (0071202)
mpitchford@dpylaw.com
J. Reid Yoder (0076587)
ryoder@dpylaw.com
Benjamin R. Sorber (0092739)
bsorber@dpylaw.com
209 S. Main St., Third Floor
Akron, OH 44308
Telephone: 330.762.7477
Facsimile:  330.762.8059

20

-and-

WAYNE COUNTY PROSECUTOR'S OFFICE

*/s/ Andrea D. Uhler*

Daniel R. Lutz (# 0038486)
Wayne County Prosecuting Attorney
Andrea D. Uhler (#0090056)
Assistant Prosecuting Attorney
115 West Liberty Street
Wooster, Ohio 44691
Phone: (330) 262-3030
Email: auhler@countyprosecutor.com

*Attorneys for Wayne County, Ohio, Wayne County Board of Commissioners, Travis Hutchinson, Douglas Hunter, and Eric Peters*

-and-

WAYNE COUNTY BOARD OF COMMISSIONERS

*/s/ Jamie L.C. Pience*

Jamie L.C. Pience (0075026)
Administrative Counsel
Wayne County Board of Commissioners
428 W. Liberty St., Wooster, OH 44691
Phone: 330-287-5478
Fax: 330-287-5407
Email: jpience@wayneohio.org

*Attorney for Wayne County Board of Commissioners*

## CERTIFICATE OF COMPLIANCE: LR 7.1

Pursuant to Local Rule 7.1, I hereby certify that the foregoing Memorandum complies with the 20-page limitation for standard track cases, and includes a table of contents, table of authorities, summary of argument and statement of issues, as required by the local rules.

*/s/ Marshal M. Pitchford*
Marshal M. Pitchford (0071202)
Benjamin R. Sorber (0092739)

## CERTIFICATE OF COMPLIANCE: CMC Scheduling Order

Pursuant to this Court's standing Case Management Conference Scheduling Order, I hereby certify that a written request was sent to counsel for Plaintiff on April 28, 2021, via email, requesting Plaintiff dismiss its suit. On May 5, 2021, Plaintiff through her attorney, William Walker, notified the undersigned counsel via email that Plaintiff would not be dismissing its suit.

*/s/ Marshal M. Pitchford*
Marshal M. Pitchford (0071202)
Benjamin R. Sorber (0092739)

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May 2021, the foregoing was served upon opposing counsel via the Court's electronic filing system.

*/s/ Benjamin R. Sorber*
Marshal M. Pitchford (0071202)
Benjamin R. Sorber (0092739)