PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MARCIA EGGLESTON, | ) | CASE NO.  5:20-CV-2757 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| WAYNE COUNTY, OHIO, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF No. 16] |

Pending is Defendants' Motion for Judgment on the Pleadings.  ECF No. 16.  Defendants

move the Court to dismiss Plaintiff's Amended Complaint (ECF No. 10) in its entirety pursuant

to Federal Rule of Civil Procedure 12(c).  The Motion is fully briefed.  ECF Nos. 18, 20, and 27.

For the reasons provided below, Defendants' Motion is denied.

## I.  Background

This case arises from the killing of Rodney Geiser (hereinafter referred to as "Decedent")

by law enforcement in Apple Creek, Ohio on December 16, 2018.  Although the parties disagree

about certain specific—and crucial—factual details,[1] the overarching narrative is essentially

undisputed, and, indeed, was almost entirely captured on video, albeit from multiple angles.  *See*

---

[1]  Specifically, the parties disagree about the events immediately preceding
Decedent's killing; although the parties agree about much of what happened that
morning, their disagreement as to what occurred in these moments preceding the shooting
is dispositive of many of the arguments examined in this Order.  *See, e.g.*, *Dickerson v.
McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996) ("[I]n reviewing the plaintiffs' excessive
force claim, we limit the scope of our inquiry to the moments preceding the shooting.").

(5:20-CV-2757)

Exhibits B, D, F, G, H, and J to ECF No. 10.  The Court has reviewed the video evidence in the record and sets forth the following facts based on its review.

Decedent's son called police to report that his father was threatening to hurt himself. Several officers responded, including Officer Nieman of the Apple Creek Police Department and Deputies Peters and Rubenstein of the Wayne County Sheriff's Department, among others. Decedent was found behind a business in downtown Apple Creek, and when he noticed the police officers he pointed a handgun at his own head.  After calmly engaging with the responding officers, Decedent stood and began to walk through town, all the while holding the gun to his own head.  Officers followed, constantly asking Decedent to put the gun down and talk with them.  Decedent led the officers across a busy road and past several businesses.  In addition to their engagement with Decedent, officers interacted with any members of the public they came across, ordering them to remain in cars or buildings and stay far away from Decedent.

Eventually, the officers and Decedent became arranged such that Decedent was walking down a street called High Street towards Deputies Peters and Rubenstein, with Officer Nieman behind him.  The videos show Decedent pause briefly, apparently exchange some words with Deputy Peters, then continue walking.  At this point Deputy Peters fired a single shot, which went through Decedent's arm and torso, killing him.

The parties disagree about exactly how the shooting unfolded, and the body camera footage submitted by Plaintiff, although it captures the shooting from several angles, is not sufficiently clear to resolve the dispute at this stage of the litigation.  Defendants' position is that Decedent "advance[d] towards Dep[uty] Rubenstein while brandishing the firearm," (ECF No.

2

(5:20-CV-2757)

16 at PageID #: 176) such that Deputy Peters was forced to shoot to save Deputy Rubenstein

from imminent danger. Plaintiff's position is that Deputy "Peters shot Decedent as he was

walking away slowly with his head bowed down." ECF No. 18 at PageID #: 202. The parties

agree that the total duration of the encounter—from the time the responding officers first found

Decedent to the time he was fatally shot—was only twenty-four minutes.

Defendants' Motion seeks dismissal of all claims.

## II. Standard of Review

A motion for judgment on the pleadings pursuant to Rule 12(c) should be "granted when

no material issue of fact exists and the party making the motion is entitled to judgment as a

matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

When the defense of failure to state a claim is raised in a motion for judgment on the pleadings,

the Court must apply the standard for a Rule 12(b)(6) motion. *Id.* at 581; *see also* 5C ARTHUR R.

MILLER, MARY KAY KANE, & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE §

1367 (3d ed. 2021) ("The Rule 12(c) motion may be employed by the defendant as a vehicle for

raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings. . . . [I]f

any of these procedural defects are asserted upon a Rule 12(c) motion . . . the district court will

apply the same standards for granting the appropriate relief or denying the motion as it would

have employed had the motion been brought prior to the defendant's answer under Rule[]

12(b)[(6)]."). The Court will, in that case, "construe the complaint in the light most favorable to

the plaintiff and accept all allegations as true to determine whether the complaint contains

(5:20-CV-2757)

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (cleaned up).

### III. Discussion

Plaintiff has pled eleven Counts in total (ECF No. 10 at PageID #: 89–106), but Defendants' Motion organizes the issues presented into roughly five categories: (A) Plaintiff's constitutional claims and Defendants' request for qualified immunity; (B) Plaintiff's Americans with Disabilities Act (ADA) claim; (C) what Defendants characterize as Plaintiff's *respondeat superior* theories; (D) statutory immunity; and (E) punitive damages. ECF No. 16 at PageID #: 167–68. Plaintiff's response follows the same organizational structure (ECF No. 18 at PageID #: 207–20), and the Court agrees that this structure makes sense, so this Memorandum of Opinion and Order is organized in the same fashion.

#### A. Constitutional Claims

In Counts 1 through 3 and 6 through 9, Plaintiff brings claims pursuant to 42 U.S.C. § 1983, alleging under various theories that various Defendants violated Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. ECF No. 10 at PageID #: 89–105. As Defendants fairly sum up, Plaintiff alleges that the killing of Decedent "constituted an unreasonable seizure (Count 1) and an excessive use of force (Count 2) which violated his civil rights (Count 6) for which [Deputy] Peter[s'] supervisor, [Captain] Hunter, is liable (Count 3). The Amended Complaint further alleges that the perceived violation was [the] result of an unconstitutional policy (Count 7) or the result of a failure to supervise (Count 8) and that the violation was 'ratified' by Defendants (Count 9)." ECF No. 16 at PageID #: 179.

4

(5:20-CV-2757)

Defendants present two arguments against these claims: that the Wayne County Defendants are entitled to qualified immunity, and that the "Amended Complaint fails to demonstrate that the Wayne County Defendants' actions violated [Decedent's] constitutional rights." *Id.* at PageID #: 180.

### 1. Qualified Immunity

Defendants are not entitled to qualified immunity at this stage of the litigation because there are issues of material fact that preclude reaching that conclusion and subsequent dismissal under Rule 12(c).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity.  *Id.* at 201. The Court must consider (1) whether a constitutional right has been violated; and (2) whether that right was clearly established.  *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011); *Katz*, 533 U.S. at 201.  In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not mandatory, and courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.  *Id.* at 236.

Once a defendant raises the qualified immunity defense, the burden is on the plaintiff to demonstrate that the official is not entitled to qualified immunity by alleging facts sufficient to show that the official's act violated clearly established law at the time that it was committed. *Simmonds v. Genesee Cty.*, 682 F.3d 438, 444 (6th Cir. 2012).  "To defeat the qualified immunity bar, a plaintiff 'must present evidence sufficient to create a genuine issue as to whether the defendant committed the acts that violated the law.'"  *Id.* (quoting *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994)).

5

(5:20-CV-2757)

Here, dismissal based on qualified immunity cannot be granted because the pleadings submitted by the parties establish a genuine issue of fact that is material to the question of whether Deputy Peters' use of force violated Decedent's clearly established constitutional rights.[2] Specifically, the fact issue of whether Decedent was "advanc[ing] towards [Deputy] Rubenstein while brandishing the firearm," (ECF No. 16 at PageID #: 176) or "walking away slowly with his head bowed down" (ECF No. 18 at PageID #: 202) must be resolved by a finder of fact before the Court can properly consider the "objective reasonableness" of the officers' actions, paying the requisite "careful attention to the facts and circumstances of [this] particular case." *Graham v. Connor*, 490 U.S. 386, 388, 396 (1989); *see also Hanson v. City of Fairview Park, Ohio*, 349 F. App'x 70, 73–76 (6th Cir. 2009) (describing the district court's inability to grant qualified immunity in an excessive force case due to the presence of genuine issues of material fact).

---

[2]  Although Defendants have used the vehicle provided by Rule 12(c) to seek qualified immunity, Plaintiff filed so much evidence with her Amended Complaint that, at least on this issue, the Court is presented with a record that more closely resembles a typical Rule 56 motion. *See, e.g.*, ECF No. 11.  The Court need not convert the instant Motion to a Rule 56 motion, however, because all of the evidence supplied by Plaintiff is incorporated into the Amended Complaint.  The evidence is, therefore, not "outside of the pleadings."  *Cf. Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006).  Similar to the standards for resolving a Rule 56 motion, a "motion for judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court. . . . [I]f the pleadings do not resolve all of the factual issues in the case, proceeding with discovery and potentially a trial on the merits would be more appropriate than an attempt at resolution of the case on a Rule 12(c) motion."  5C ARTHUR R. MILLER, MARY KAY KANE, & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2021); *see also* ECF No. 20 at PageID #: 226 ("While [a case cited by Defendants] dealt with a motion for summary judgment, the same principles apply to a motion for judgment on the pleadings.").

6

(5:20-CV-2757)

Defendants argue that the Court should find that the video evidence submitted by Plaintiff directly contradicts Plaintiff's allegations, and that the Court should instead adopt the narrative presented by the defense. ECF No. 20 at PageID #: 225–27. Based on its own review of the record, the Court does not agree that Plaintiff's version of events is "blatantly contradicted by the video evidence in the record." Id. at PageID #: 227. Rather, a reasonable jury could find support in the evidence for the narrative presented by Plaintiff. Because a jury must make a factual determination before the Court can decide whether or not Defendants are entitled to qualified immunity, Defendants' request for qualified immunity is denied at this juncture.

### 2. Constitutional Violations

Defendants' request for dismissal based on the argument that Decedent's constitutional rights were simply not violated by his killing is denied for the same reason as their request for qualified immunity. As explained above, Defendants have not demonstrated that "no material issue of fact exists and [that they are] entitled to judgment as a matter of law." Winget, 510 F.3d at 582.

### B. ADA Claim

Plaintiff alleges that Defendants violated the ADA by failing to reasonably accommodate Decedent's disability when they failed to explicitly warn him that deadly force was about to be used against him. ECF No. 18 at PageID #: 214; ECF No. 10 at PageID #: 94. Defendants submit that a successful ADA claim requires a plaintiff to show that he was subjected to discrimination because of his disability, and that here, "officers only employed deadly force against [Decedent] because of his threatening behavior and continued failure to respond to

7

(5:20-CV-2757)

officers' requests to stop and put down his gun—not because of any disability [Decedent] may have had." ECF No. 16 at PageID #: 185–86 (citing *Beans v. City of Massillon*, 706 F. App'x 295 (6th Cir. 2017); *Thompson v. Williamson Cty., Tenn.*, 219 F.3d 555 (6th Cir. 2000)).

Defendants' Motion is premature on this issue as well.  Plaintiff's Amended Complaint alleges sufficient facts to state a claim that Decedent was subject to discrimination because of his disability.  *See, e.g.*, ECF No. 10 at PageID #: 99–100.  That is sufficient to withstand a Rule 12(c) motion.  Defendants argue that "[i]n this type of case, it is axiomatic that the plaintiff 'present evidence that animus against the protected group was a significant factor in the position taken" by Defendants.  ECF No. 16 at PageID #: 185 (citing *Beans*, 706 F. App'x at 199); ECF No. 20 at PageID #: 231 ("[T]here is no evidence that the actions of Defendants [were] based upon any purported disability.").  It may be true, at a later stage of the litigation, that a lack of evidence would warrant dismissal.  But at this stage—defending a failure-to-state-a-claim argument in a motion for judgment on the pleadings—Plaintiff has no duty to present evidence in support of her well-pleaded allegations.

### C. *Respondeat Superior* Arguments

Defendants argue that Counts 3 (supervisory liability), 7 (*Monell*), 8 (failure to supervise) and 9 (ratification) must all be dismissed for failure to state a claim.  ECF No. 16 at PageID #: 186.  Defendants characterize these Counts as Plaintiff's *respondeat superior* theories, and argue that they must be dismissed because, under *Monell v. Department of Social Services of the City of New York*, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.* at PageID #: 186–87 (citing 436 U.S. 658, 691 (1978)).  In her opposition to

8

(5:20-CV-2757)

Defendants' Motion, Plaintiff correctly points out that none of these Counts actually seek to impose vicarious liability on Defendants.  Rather, all of them properly plead direct liability claims.  Defendants' Motion to dismiss these Counts on this basis is, therefore, denied.

In Count 3 (supervisory liability), Plaintiff sufficiently alleges that Captain Hunter is directly liable for his part in Decedent's killing because his own actions violated Decedent's constitutional rights.  ECF No. 10 at PageID #: 91–93.  In Count 7, Plaintiff sufficiently alleges that Decedent's killing was the result of actions pursuant to official county policy and/or custom, namely, that the Sheriff had a policy of responding to threats such as those allegedly posed by Decedent proactively, rather than waiting for circumstances to justify the use of deadly force.  Id. at PageID #: 102–04.  In Count 8, Plaintiff sufficiently alleges that Defendants Sheriff Hutchinson and Captain Hunter are directly liable for their parts in Decedent's killing because their own actions violated Decedent's constitutional rights.  Id. at PageID #: 104.  Finally, in Count 9, Plaintiff sufficiently alleges that Defendants Wayne County, Sheriff Hutchinson, and Captain Hunter are directly liable for their parts in Decedent's killing because their own actions violated Decedent's constitutional rights, under a different theory.  Id. at PageID #: 105.

**D.  Statutory Immunity**

Defendants seek dismissal of Plaintiff's state law claims because of the immunity granted political subdivisions and their employees by Ohio statute.  ECF No. 16 at PageID #: 189 (citing O.R.C. § 2744.03(A)(6)).[3]  Subdivision (A)(6)(b) of that statute provides an exception, however:

---

[3]  Plaintiff pleads state law claims in Counts 4 (wrongful death), 10 (survivorship action), and 11 (willful, wanton, and reckless conduct).  ECF No. 10 at PageID #: 93–94,

(continued...)

9

(5:20-CV-2757)

the immunity does not apply if the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6)(b).  Plaintiff has adequately pled that Defendants' actions meet this exception; indeed, that appears to be the whole point of Count 11, which is titled "Willful, Wanton, and Reckless Conduct."  ECF No. 10 at PageID #: 106.  Defendants' Motion to dismiss Plaintiff's state law claims on the basis of statutory immunity is denied.

### E.  Punitive Damages

Defendants' final argument is that Ohio prohibits the award of punitive damages against political subdivisions and their employees by statute.  ECF No. 16 at PageID #: 190 (citing O.R.C. § 2744.05(A)).  Defendants incorrectly assert that "[e]mployees of a political subdivision are entitled to the same immunity as the political subdivision itself, including immunity from punitive damages."  *Id.*  The case cited by Defendants, *R.K. v. Little Miami Golf Center*, does provide that "employees are entitled to the same immunity due the political subdivision," but only in the context of the immunity provided by § 2744.03, which explicitly grants immunity to "a political subdivision or an employee of a political subdivision."  1 N.E.3d 833, 843 (Ohio Ct. App. 2013) (citation omitted); O.R.C. § 2744.03.  The relevant statute for purposes of punitive damages, however, is § 2744.05, which, by its own terms, only applies to political subdivisions, and not to their employees.  O.R.C. § 2744.05; *see also Schaad v. Buckeye Valley Local Sch.*

---

³(...continued)
105–06.  Defendants also mention Count 3 in this section of their brief (ECF No. 16 at PageID #: 189), but the Court fails to see how this § 1983 claim for violations of the U.S. Constitution is a state tort claim like Counts 4, 10, and 11.

(5:20-CV-2757)

*Dist. Bd. of Educ.*, No. 15 CAE 080063, 2016 WL 693546, at *5 (Ohio Ct. App. Feb. 12, 2016)

("[T]he request for punitive damages suggests appellant is being sued individually as well, as

punitive damages cannot be awarded against a political subdivision performing a governmental

function."). The individual Defendants in this case may not, therefore, take advantage of the

immunity provided by § 2744.05.

In addition to the above issue of Ohio law, as Plaintiff points out, punitive damages

against particularly culpable individual defendants are generally available to successful § 1983

plaintiffs under federal law. ECF No. 18 at PageID #: 220 (citing *Smith v. Wade*, 461 U.S. 30, 48

(1983)). If Plaintiff prevails on some of the claims pled in her Amended Complaint, punitive

damages may well be available.

### IV.  Conclusion

For the reasons provided above, Defendants' Motion for Judgment on the Pleadings (ECF

No. 16) is denied in its entirety.


IT IS SO ORDERED.


   August 11, 2021                                     */s/ Benita Y. Pearson*                  

Date                                                 Benita Y. Pearson

                                                 United States District Judge